WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cameron Clayton Nichols,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-08307-PCT-DLR<br><br>**ORDER** |

Plaintiff Cameron Nichols seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied Plaintiff's claim for disability insurance benefits and supplemental security income. Having reviewed the parties' briefs and the administrative record ("AR."), the Court affirms the Commissioner's decision.

**I.     Background**

In 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability due to a back injury, lower back blown discs, pinched nerves, fracture of the spine, and low blood pressure. (AR. 61-62, 72-73.) State agency reviewers denied his application on initial review and reconsideration. (*Id.* at 113-24.) Plaintiff then requested and received a hearing before an administrative law judge ("ALJ"), who issued an unfavorable decision in 2020. (*Id.* at 16-26.)

An ALJ follows a five-step process to determine whether an applicant is disabled.

The applicant must show that (1) he has not engaged in substantial gainful activity since his alleged disability date, (2) he has a severe impairment, and either (3) his impairment meets or equals a presumptively disabling impairment listed in the agency regulations or (4) his residual functional capacity ("RFC"), the most he can do despite his impairments, precludes him from performing past relevant work.  If the applicant meets his burden at step three, he is presumed disabled and the process ends, but if the inquiry proceeds and the applicant meets his burden at step four, then (5) the burden shifts to the Commissioner to show that the applicant can perform other work available in the national economy given his RFC, age, education, and work experience.  *See* 20 C.F.R. § 404.1520.

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 2017; suffers from the severe impairments of lumbar degenerative disk disease with radiculopathy, status-post right L5-S1 hemilaminotomy, partial facetectomy, and foraminotomy; does not have an impairment or combination of impairments that meets or equals one of the listed impairments; has the RFC to perform sedentary work, but with some additional exertional limitations; is unable to perform any of his past relevant work; but could perform other work in the national economy; and therefore was not disabled. (AR. 16-26.)  The ALJ's decision became the Commissioner's final decision when the agency's Appeals Council denied review.  (*Id.* at 1.)

**II.     Legal Standard**

The Court reviews only those issues raised by the party challenging the Commissioner's decision, *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001), and may reverse the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error, *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III.    Discussion**

Plaintiff first claims that the Commissioner's decision is constitutionally defective because the Social Security Act provision restricting the President's authority to remove the Commissioner without cause, 42 U.S.C. § 902(a)(3), violates separation of powers. Plaintiff contends that this constitutional defect entitles him to a new hearing before a different ALJ. Second, Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence because the ALJ rejected the exertional limitations proffered by the non-examining state agency consultants and then "crafted an RFC out of whole cloth." (Doc. 20 at 1.) The Court rejects both arguments.

**A.  Constitutional Challenge**

"Generally, restrictions on Presidential removal powers of an agency director violate the separation of powers and render an agency's structure unconstitutional." *Campbell v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02048-PHX-JAT, 2022 WL 34677, at *3 (D. Ariz. Jan. 4, 2022) (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) and *Collins v. Yellen*, 141 S. Ct. 1761 (2021)). Section 902(a)(3) prohibits the President from removing the Commissioner without cause. Plaintiff and the Commissioner agree that § 902(a)(3)'s restrictions on the President's authority to remove the Commissioner are unconstitutional, but they disagree about the implications of that defect. Plaintiff argues that this defect entitles him to a new hearing before a new ALJ; the Commissioner argues that Plaintiff is not entitled a new hearing because nothing about the defect in § 902(a)(3) caused Plaintiff harm. The Court agrees with the Commissioner.

On this question, the undersigned is not writing on a blank slate. At least three other judges in this district have confronted and rejected constitutional challenges like that raised by Plaintiff here. *See Campbell*, 2022 WL 34677; *Nudelman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213 (D. Ariz. Jan. 11, 2022); *Jordan v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08022-PCT-DGC, 2022 WL 842902 (D. Ariz. Mar. 22, 2022). The Court finds these well-reasoned decisions persuasive and, rather than reinvent the wheel, excerpts some pertinent analysis from *Jordan*:

> The Supreme Court held in *Seila Law* and *Collins* that statutory limitations on the President's ability to remove an Executive Branch agency head violate the separation of powers. *Seila Law*, 140 S. Ct. at 2192; *Collins*, 141 S. Ct. at 1784. The *Seila Law* Court further held that a removal provision is "severable from the other statutory provisions bearing on the [agency's] authority[,]" and "[t]he agency may therefore continue to operate[.]" 140 S. Ct. at 2192. The Court confirmed this holding in *Collins*, explaining that where the agency head was properly appointed, "the unlawfulness of the removal provision does not strip the [agency head] of the power to undertake the other responsibilities of his office," and there was "no reason to regard any of the actions taken by the [agency] . . . as void." 141 S. Ct. at 1787-88 & n.23. The *Collins* Court concluded, however, that this did not necessarily mean that the plaintiffs had no entitlement to relief because it was still possible for the removal provision to inflict "compensable harm." *Id.* at 1788-89. The Court provided two examples: (1) where the President had attempted to remove an agency head "but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; or (2) where the President had expressed displeasure with actions taken by an agency head and had asserted that he would remove the agency head "if the statute did not stand in the way." *Id.* at 1789.
>
> Andrew Saul, who was appointed by former President Trump, was the Social Security Commissioner in 2020 when the ALJ heard and decided Plaintiff's claim for benefits and when the Appeals Council denied review. *See* Soc. Sec. Admin., Historical Information, https://www.ssa.gov/history/commissioners.html (noting that Mr. Saul served as Commissioner from June 17, 2019 until July 9, 2021) (last visited Feb. 9, 2022); *see also Sean E. M. v. Kijakazi*, No. 20-CV-07295-SK, 2022 WL 267406, at *2 & n.2 (N.D. Cal. Jan. 28, 2022) (taking judicial notice of this fact). Plaintiff does not contend that the President "sought to remove . . . Commissioner Saul or that either a Commissioner or the President was involved [in] or even aware of [his] disability benefits claim. Therefore, he [has] 'failed to show how or why § 902(a)(3)'s removal clause possibly harmed him.'" *Sean E. M.*, 2022 WL 267406, at *5[.]

2022 WL 842902, at *2.

Here, Plaintiff argues that he was injured because he was "deprived . . . of a valid administrative adjudicatory process," and because "the ALJ decided this case under regulations promulgated by Commissioner Saul when Commissioner Saul had no constitutional authority to issue those rules." (Doc. 26 at 7-8.) These arguments, likewise, have been persuasively rejected by other judges in this district:

> Noting that the ALJ's delegation of authority in this case came

- 4 -

from Commissioner Saul, Plaintiff argues that he has "suffered injuries" because he did not receive a constitutionally valid adjudicatory process. . . . Plaintiff's "argument that there exists a but-for causal chain linking his denial of benefits and § 902(a)(3) is insufficient. There is no immediately apparent connection between the ALJ denying [Plaintiff's] claims and § 902(a)(3)." *Nudelman*, 2022 WL 101213, at *13.

What is more, the unlawfulness of § 902(a)(3)'s removal provision "does not strip [Commissioners] of the power to undertake the other responsibilities of their office,' particularly where there is no argument that the [Commissioner] was not properly appointed." *Campbell*, 2022 WL 34677, at *3 (quoting *Collins*, 141 S. Ct. at 1788 & n.23). Plaintiff does not contest Commissioner Saul's or the ALJ's proper appointments. Plaintiff therefore has failed to show a compensable harm tied to Commissioner Saul's actions or § 902(a)(3)'s removal provision that would warrant a new hearing. . . .

Plaintiff further asserts that his claim for benefits was decided under regulations promulgated by Commissioner Saul. . . . "Beyond arguing a constitutional taint flowing from § 902(a)(3), [Plaintiff] fails to point out which, if any, defective regulations were promulgated in this case, how they applied to his claim, and how they affected the outcome such that he suffered a compensable harm. While it is conceivable that this constitutional defect could cause compensable harm, Plaintiff has not shown that connection." *Nudelman*, 2022 WL 101213, at *13[.]

*Id.* at *3.

In line with these thoughtful decisions, the Court rejects Plaintiff's constitutional challenge to the Commissioner's decision.

**B. Merits Challenge**

On November 27, 2017, non-examining state agency consultant Dr. Charles Combs completed an RFC assessment for Plaintiff. (AR. 66.) Dr. Combs opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; sit and stand/walk a total of 4 hours each in an 8-hour day; occasionally perform all postural maneuvers; and should avoid concentrated exposure to extreme cold, vibration, and hazards such as machinery and heights. (*Id.* at 67-68.) In May 2018, non-examining state agency consultant Dr. J. Ruiz concurred with this opinion. (*Id.* at 92-94.)

The ALJ found these opinions only partially persuasive, but not in the way one

might expect given that Plaintiff is here challenging the ALJ's RFC determination. The ALJ concluded that Plaintiff has *greater* limitations than these state agency consultants opined. The ALJ assessed Plaintiff's RFC as follows:

> he can lift and carry 10 pounds occasionally and frequently; he can sit for about 4 hours out of an 8-hour day and stand and/or walk about 4 hours out of an 8-hour day; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; and he must avoid extreme cold, vibration and hazards, including moving machinery and unprotected heights.

(*Id.* at 20.) So, the ALJ's RFC determination is consistent with the state agency consultants' opinions, except that the ALJ determined Plaintiff could occasionally lift/carry only 10 (rather than 20) pounds, and that he could never (rather than occasionally) climb ladders, ropes, or scaffolds. Although greater exertional limitations could only help Plaintiff in his application for disability benefits, he complains that the ALJ formulated this RFC out of whole cloth. The ALJ did no such thing.

"A claimant's residual functional capacity is not a medical opinion, but is an issue to be decided by the ALJ. However, the finding must be supported by substantial evidence in the record and the ALJ must explain his reasoning behind the RFC." *Perez v. Comm'r of Soc. Sec.*, Case No. 1:17-cv-00112-SAB, 2018 WL 721399, at *7 (E.D. Cal. Feb. 6, 2018) (internal citations omitted). As noted, the ALJ's RFC largely tracks the assessments of the state agency consultants but deviates as to the maximum weight Plaintiff can occasionally lift/carry, and as to Plaintiff's ability to climb ladders, ropes, or scaffolds. Plaintiff presumably agrees that he is more limited in these areas than the state agency consultants opined. But he believes the ALJ failed to explain how she settled on the exertional limitations in the RFC as opposed to even greater exertional limitations.

The ALJ, however, thoroughly summarized the evidence that she believed supported the exertional limitations in the RFC, including medical records and Plaintiff's own testimony. (AR. 20-23.) And contrary to Plaintiff's argument here, the ALJ was not playing doctor. For example, the ALJ found that the exertional limitations reflected in the RFC are consistent with "the assessments of [Plaintiff's] doctor, Andrew C. Shuter, D.O.,

and Nurse Practitioner Kimberleigh M. Telling, which preclude [Plaintiff] from heavy lifting or lifting anything over 10 pounds." (AR. 23, 303, 319.)  The ALJ therefore was not interpreting raw medical data but was guided by physician notes supporting the exertional limitations the ALJ assessed.

**IT IS ORDERED** that the Commissioner's non-disability decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 29th day of March, 2022.

Douglas L. Rayes
United States District Judge